1  Law Offices of Robert R. Jung
   Robert R. Jung (014198)
2  Attorney at Law
   21001 N. Tatum Blvd., Ste 1630-725
   Phoenix, AZ 85050
3  Office: 480.704.5030          ORIGINAL
   Fax: 480.907.2692
4

5        IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

6           IN AND FOR THE COUNTY OF MARICOPA

7

8  HECTOR MORENO and ANA MORENO,        ) Case No.:
              Plaintiff,                )
9       vs.                             )
                                        )
10 AURORA LOAN SERVICES, LLC; LEHMAN    )    CV 2009-050049
   BROTHERS HOLDING, INC.; LEHMAN XS    )
11 TRUST 2006-5; STRUCTURED ASSET       )
12 SECURITIES CORPORATION; LEHMAN       )
   BROTHERS, INC.; CITI BANK, N.A.; LEHMAN )        SUMMONS
13 BROTHERS BANK, FSB; MORTGAGE         )   If you would like legal advice from a lawyer,
   ELECTRONIC REGISTRATION SYSTEMS,     )   contact the Lawyer Referral Service at
14 INC; CAL-WESTERN RECONVEYANCE        )
15 CORPORATION; JOHN DOES 1-1000; JANE  )        602-257-4434
   DOES 1-1000; ABC CORPORATIONS I-XX;  )             or
16 AND XYZ PARTNERSHIPS I-XX            )    www.lawyerfinders.org.
                                        )
17           Defendants                 )       Sponsored by the
                                        )    Maricopa County Bar Association

18 THE STATE OF ARIZONA TO THE DEFENDANTS:

19            AURORA LOAN SERVICES, LLC.

20    YOU ARE HEREBY SUMMONED and required to appear and defend, within time

21 applicable, in this action in this Court. If served within Arizona, you shall appear and defend

22 within 20 days after the service of Summons and Complaint upon you, exclusive of the day of

23 service. If served out of the State of Arizona—whether by direct service, by registered or

24 certified mail, or by publication—you shall appear and defend within 30 days after the service of

25 the Summons and Complaint upon you is complete, exclusive of the day of service. Where

26 process is served upon the Arizona Director of Insurance as an insurer's agent to receive service

27 of legal process against it in this state, the insurer shall not be required to appear, answer or plead

28 until expiration of 40 days after date of such service upon the director. Service by registered or

[HECTOR MORENO and ANA MORENO - SUMMONS]

EXHIBIT 1
PAGE 1 OF 45

1   certified mail without the State of Arizona is complete upon receipt by the party being served of

2   the Summons and Complaint. The Person receiving the Summons and Complaint shall appear

3   and answer within 30 days from such receipt. Service by publication id complete 30 days after

4   the date of this application. Direct service is complete when made. Service upon the Arizona

5   Motor Vehicle Superintendent is complete 30 days after the Affidavit of Compliance and return

6   receipt or Officer's Return. **A.R.S. § 22-213**

7   Copies of the pleadings herein may be obtained by contacting the Clerk of Superior Court,

8   Maricopa County, located at 201 W. Jefferson, Phoenix, Arizona. RCP 4.1(e).

9       **YOU ARE HEREBY NOTIFIED** that in this case of your failure to appear and defend

10  within the time applicable, judgment by default may be rendered against you for the relief

11  demanded in the Complaint.

12      Requests for reasonable accommodation for persons with disabilities must be made to the

13  division assigned to the case by parties at least three (3) judicial days in advance of a scheduled

14  Court proceeding.

15      **YOU ARE CAUTIONED** that in order to appear and defend, you must file an Answer

16  or proper response in writing with the Clerk of this Court, accompanied by the necessary filing

17  fee, within the time required, and you are required to serve a copy of any Answer or response

18  upon the Plaintiff's attorney. **RCP 10(d); ARS § 22-311; RCP 5; ARS § 22-215, 22-216.**

19                  The name and address of the plaintiffs' attorney is:
                        Law Offices of Robert R. Jung
20                        Robert R. Jung (014198)
                            Attorney at Law
21              21001 N. Tatum Blvd., Ste 1630-725
                         Phoenix, AZ  85050
22

23  SIGNED AND SEALED this date: _____   FEB 1 7 2009

24

25                  Clerk of Superior Court                    JEANES, CLERK

26              By: _____

27                      Deputy Clerk

28                                                  S. PONICKI
                                                DEPUTY CLERK


[HECTOR MORENO and ANA MORENO — SUMMONS]

EXHIBIT 1
PAGE 2 OF 45



Law Offices of Robert R. Jung
Robert R. Jung (014198)
Attorney at Law
21001 N. Tatum Blvd., Ste 1630-725
Phoenix, AZ 85050
Office: 480.704.5030
Fax: 480.907.2692

COPY

FEB 1 7 2009

MICHAEL K. JEANES, CLERK
S. PONICKI
DEPUTY CLERK

### IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
### IN AND FOR THE COUNTY OF MARICOPA

HECTOR MORENO and ANA MORENO,
　　　　　Plaintiff,

　　vs.

AURORA LOAN SERVICES, LLC; LEHMAN
BROTHER HOLDING, INC.; LEHMAN XS
TRUST 2006-5; STRUCTURED ASSET
SECURITIES CORPORATION; LEHMAN
BROTHERS. INC.; CITI BANK, N.A.; LEHMAN
BROTHERS BANK, FSB; MORTGAGE
ELECTRONIC REGISTRATION SYSTEMS,
INC; CAL-WESTERN RECONVEYANCE
CORPORATION; JOHN DOES 1-1000; JANE
DOES 1-1000; ABC CORPORATIONS I-XX;
AND XYZ PARTNERSHIPS I-XX
　　　　　Defendants

) Case No.:
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## CV 2009-050049

**AMENDED
VERIFIED COMPLAINT**

**JURY TRIAL REQUESTED**

### BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

　　1　　Plaintiff, HECTOR MORENO and ANA MORENO, has filed the instant lawsuit against Defendants AURORA LOAN SERVICES, LLC; LEHMAN BROTHER HOLDING, INC.; LEHMAN XS TRUST 2006-5; STRUCTURED ASSET SECURITIES CORPORATION; LEHMAN BROTHERS. INC.; CITI BANK, N.A.; LEHMAN BROTHERS BANK, FSB; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC; CAL-WESTERN RECONVEYANCE CORPORATION; JOHN DOES 1-1000; JANE DOES 1-1000; ABC CORPORATIONS I-XX; AND XYZ PARTNERSHIPS I-XX alleging violations of the Truth in Lending Act, the Real Estate Settlement Process Act, and state law arising from a mortgage loan

1   between the parties. Because Defendants MORTGAGE ELECTRONIC REGISTRATION
2   SYSTEMS, INC.; c/o AURORA LOAN SERVICES and QUALITY LOAN SERVICE
3   CORPORATION have failed to adjourn the Trustee's sale scheduled for March 9th, 2009 at
4   10:00 AM (EXHIBIT H Note: Sale is currently postponed from original sale date of January 5,
5   2009), Plaintiff has filed a Motion for Temporary Restraining Order.

6   ## I. JURISDICTION AND VENUE

7       2      This Court has Jurisdiction over matters related to the emergency, injunctive,
8   provisional and equitable relief sought herein, pursuant to the agreements of the parties
9   referenced below.

10       3      The facts and circumstances that brought the plaintiff under Arizona State Court
11   jurisdiction are that this complaint involves violations of Federal and State Law and the plaintiff
12   and defendants are citizens of different states.

13       4      As a whole, the complaint is based on actual count of facts and claims based on
14   State and Federal Law since plaintiff has pursued and exhausted all administrative remedies prior
15   the filing of this action in Court.

16       5.     The issue is covered by the Rule of law which are A.R.S. § 44-1521, *et.seq.*;
17   A.R.S. § 33-420, *et.seq.*; 28 U.S.C § 1331; 28 U.S.C § 1332; 28 U.S.C § 1367; 28 U.S.C § 1391;
18   15 U.S.C § 1692; 12 U.S.C § 2614; 12 U.S.C. Chapter 38; Jurisdiction, Title 12, Regulation Z,
19   Part 226.1(c)(3).

20       6      This Court has subject matter jurisdiction related to emergency, injunctive,
21   provisional and equitable relief sought herein. Proper venue is within this Honorable Court
22   pursuant Ariz.Rev.Stat.Ann. 12-401, *et.seq.*

23       7      This action is brought, for among other purposes, to restrain and enjoin the
24   Defendants, their agents, employees, representatives, lawyers, directors and officers, from taking
25   any action to improperly transfer, dispose of, or use the property of Plaintiffs to foreclose and
26   gain possession of Plaintiffs' Property.

27

28

## II. THE PARTIES

8    Plaintiff HECTOR MORENO and is a man couple, living in the State of Arizona at all times relevant to this Complaint.

9    Plaintiff ANA MORENO is a married woman, living in the State of Arizona at all times relevant to this Complaint.

10    Plaintiffs are married and acted on behalf of the marital community.

11    Plaintiffs are a "consumer" as defined by TILA, 15 U.S.C. §1602(h) and Federal Reserve Board Regulation Z, 12 C.F.R. § 226.2(a)(11).

12    Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS), upon research and belief, a corporation organized under the laws of Delaware and doing business in the State of Arizona. MERS, Inc., is not registered to do business in the state of Arizona. MERS Inc., has an address of P.O. Box 2026, Flint, MI 48501-2026.

13    Defendant AURORA LOAN SERVICES, LLC., upon research and belief, a corporation organized under the laws of Delaware and doing business in the State of Arizona. AURORA LOAN SERVICES, LLC., an affiliate of seller, has an address of 2617 College Park Drive Scottsbluff, NE 69361-2294.

14    Defendant LEHMAN BROTHER HOLDING, INC., upon research and belief, a corporation organized under the laws of Delaware and doing business in the State of Arizona. LEHMAN BROTHER HOLDING, INC., it's executive offices are located at address 745 7th Ave. New York, NY 10019.

15    Defendant LEHMAN BROTHER, INC., upon research and belief, a corporation organized under the laws of Delaware and doing business in the State of Arizona located at address 745 7th Ave. New York, NY 10019. LEHMAN BROTHER, INC., an affiliate to the Depositor, Seller, Master Servicer, agrees to buy certificates from Depositor subject to the terms and conditions set forth in the underwriting.

16    Defendant LEHMAN XS TRUST 2006-5, upon research and belief, a common law trust formed under the laws of the state of New York.

EXHIBIT 1
PAGE 5 OF 45

17      Defendant LEHMAN BROTHERS BANK, FSB., upon research and belief, a corporation organized under the laws of Delaware and doing business in the State of Arizona with executive offices located at address 745 7th Ave. New York, NY 10019.

18      Defendant STRUCTURED ASSET SECURITIES COPORATION, upon research and belief, a corporation organized under the laws of Delaware and doing business in the State of Arizona. A special purpose corporation that will sell mortgage loans to the issuing entity. Depositor buys certificates from Issuing Entity then sells it to the Underwiter. STRUCTURED ASSET SECURITIES COPORATION, has an address of 745 7th Ave., New York, NY 10019.

19      Defendant   CAL-WESTERNRECONVEYANCE   CORPORATION,   upon research and belief, has an address of 525 East Main Street, P.O. Box 22004, El Cajon, CA 92022-9004.

20      Defendant CITI BANK, N.A., upon research and belief, a national banking association. A corporation under the laws of the United States. CITI BANK, N.A., has an address of 399 Park Ave. New York, NY 10022-4614

21      Defendants JOHN DOES 1-1000; JANE DOES 1-1000; ABC CORPORATIONS I-XX; AND XYZ PARTNERSHIPS I-XX are persons or entities that are unknown to Plaintiffs. Their capacities are unknown. Plaintiffs allege that they are in some way involved in the actions complained of herein as either independent actors, or as agents or principals of the other named Defendants. Plaintiff will amend this complaint to allege their true identities, capacities and roles as and when they are ascertained.

### III. SECURITIZATION BACKGROUND

22      The participants in the securitization scheme described herein have devised business plans to reap millions of dollars in profits at the expense of Plaintiff and other investors in certain trust funds.

23      The mortgage market changed in recent years from one in which lenders originated mortgages for retention in their own portfolios to one in which lenders attempted to generate as many mortgage loans as possible for resale on the secondary mortgage market. The goal of lenders, such as Defendants, were to generate high loan volumes, originate loans above

1  market interest rates for the premium prices paid at the secondary market, and becoming the
2  servicers of those loans generated.

3      24    Securitization is the financial technology that integrates the market for residential
4  mortgages with the capital markets. In securitization, investment banks take pools of home loans,
5  carve up the cash flows from those receivables, and convert the cash flows into bonds that are
6  secured by the mortgages. The bonds are variously known as residential mortgage-backed
7  securities (RMBS) or asset-backed securities (ABS).

8      25    Securitization goes by the moniker "structured finance," in part because a
9  securitizer structures the transaction to isolate the loan pool from the original lender. This is
10  accomplished by selling the loan pool to a special purpose vehicle or "SPV" that is owned by,
11  but legally distinct from, the lender. The SPV then resells the loan pool to a second SPV, which
12  is also independent of the lender and takes title to the bundle. The second SPV is typically in the
13  form of a trust. This two-tiered structure protects investors by preventing lenders' creditors from
14  reaching the assets backing the securities in case the lender goes bankrupt.  Bankruptcy
15  remoteness also boosts ratings of securitized offerings.

16      26    Rating agencies evaluate and rate securitized loan pools. To the extent that SPVs
17  protect investors from the risk of the lender's bankruptcy, it is often possible for the loan bundle
18  to earn a higher rating than the lender itself would receive. In this way, "non-investment grade
19  and unrated originators (the majority of the market) [can] create investment-grade transactions."
20  After the loans are transferred to the second SPV, the investment bank for the issuer, carves the
21  principal and interest payments into tranches of bonds. Then, rating agencies gauge the credit
22  risk of each tranche by comparing the loan pool's characteristics with historical data and
23  forecasting the tranche's performance. In calculating credit risk, however, rating agencies do not
24  assess the suitability of the underlying loans for individual borrowers. The tranche system is
25  termed a "senior-subordinate structure" and is the "predominant structure of choice in subprime
26  RMBS." The tranches are arrayed from the most senior to the most junior, with "as many as five
27  mezzanine or subordinated tranches going down the ratings ladder" from AAA to B.  The senior
28  class is the AAA tranche, the mezzanine class consists of the AA and A tranches, and the BBB,

[HECTOR MORENO and ANA MORENO ........ -

EXHIBIT 1
PAGE 7 OF 45

1  BB, B, and unrated classes take the junior position. Any rating of BBB-/Baa3 or above is
2  deemed investment-grade and serves to assuage investors' concerns about the credit quality of
3  the mortgages backing the securities.

4      27    In a feature known as a "waterfall," the senior tranche is paid off before any other
5  tranche. Once the senior tranche is paid off, the next tranche moves to the head of the line for
6  principal payments until all of the tranches are retired. As a result, the junior tranche is the first
7  to absorb any losses and shields the senior tranches from losses due to loan defaults. Only in the
8  extremely unlikely event that losses exceeded the amounts due the holders of the junior tranches
9  would the senior tranches absorb credit losses.

10     28    Before rating agencies issue investment-grade ratings, they insist on added
11 financial cushions known as "credit enhancements." According to rating agencies, when
12 determining the needed level of credit enhancements, they assume catastrophic losses on an
13 order of magnitude of the Great Depression, with the amount of enhancements depending on the
14 rating desired, the type of collateral, and the reliability of the historical pool data.

15     29    Credit enhancements come in two types, internal and external enhancements.
16 Normally, the lender will provide sufficient internal enhancements to boost the offering to an
17 investment-grade rating. If the internal enhancements do not raise the senior tranche to a top
18 AAA rating, monoline insurers or other outside providers may add external enhancements to
19 raise the senior tranche to an AAA.

20     30    Once investment-grade ratings are in hand, the investment bank will price the
21 mortgage-backed securities and sell them to investors, either through a public offering or a
22 private placement. If the offering succeeds as planned, the lender receives two forms of revenue.
23 The first is cash from the sale of the securities. The second is "excess spread," which is the right
24 to any interest on the loans that exceeds the interest paid to the investors after deducting
25 expenses on the asset-backed bonds. In most situations, the present value of the cash proceeds
26 plus the excess spread exceeds the cash that the lender would have received from selling whole
27 loans.

28                    IV. DEFENDANTS' MODUS OPERANDI

31      Defendants used the information described on paragraphs 22-29 regarding secondary market trends, to develop loan products that could be offered for sale at the secondary market.

32      Defendants view Plaintiff as a mean for producing more loans in order to produce mortgage backed securities or mortgage pools to be sold to investors.

33      Defendants originated loans with little or no regard to borrowers' long-term ability to afford them and to sustain homeownership, in violation of HOEPA. This scheme was maintained with the knowledge and approval of Defendants.

34      Defendants implemented the deceptive scheme through misleading marketing practices designed to sell risky and costly loans to homeowners, the terms and dangers of which they did not understand, including by:

a.      encouraging borrowers to obtain purchase money financing or refinance with complicated mortgages such as hybrid adjustable rate mortgages (ei.,2/28 and 3/27) or payment option adjustable rate mortgages that were difficult for consumers to understand;

b.      Marketing the mentioned complex loan products to consumers by emphasizing the very low initial "teaser" or "fixed" rates while obfuscating or misrepresenting the later steep monthly payments and interest rate increases or risk of negative amortization.

35      Defendants employed various lending practices to further their deceptive scheme including:

a.      use of low or no documentation loans which allowed for no verification of stated income or stated assets or both, or no request for income or asset information at all;

b.      urging borrowers to encumber their homes up to 100% (or more) of the assessed value;

c.      Placing borrowers in second mortgages or HELOCs while underestimating and obscuring their total monthly payment obligations.

[HECTOR MORENO and ANA MORENO – COMPLAINT]      7

EXHIBIT 1
PAGE 9 OF 45

36      Defendants further their deceptive scheme by creating an environment which propelled loan officers to sell the riskiest loans products mentioned above. The compensation system implemented by Defendants encouraged brokers to place homeowners in loans with interest rates higher than those for which they qualified as well as prepayment obligations and balloon payments. This system of compensation aided and encouraged brokers in breaching their fiduciary duties to borrowers by inducing borrowers to accept unfavorable loan terms without full disclosure of the borrower's options and also compensated brokers beyond the reasonable value of the brokerage services they rendered.

37      Defendants cared only about selling increasing numbers of loans at any cost, in order to maximize Defendants' profits on the secondary market. Defendants' deceptive scheme had one primary goal – supply the secondary market with as many loans as possible, specifically loans that would yield the highest premiums such as the case of Plaintiff's loan transaction.

38      The majority of loans originated by Defendants were sold on the secondary market, either as mortgage-backed securities or as pools of whole loans.

39      The typical securitization transaction involving mortgage backed securities is fully described in paragraphs 22-29. Exhibit I shows the incredible complexity of the loan pooling process, securitization and Defendants' interactions among themselves pertaining to Plaintiffs' loan.

40      Defendants often sold the whole loans at a premium, meaning that the purchaser paid Defendants a price in excess of 100% of the total principal amount of the loans included in the loan pool.

41      The price paid by purchasers of securities or pools of whole loans varied based on demand for the particular types of loans included in the securitization or sale of whole loans. The characteristics of the loans such as whether the loans are prime or subprime, whether the loans have an adjustable or fixed interest rate, or whether the loans include a prepayment penalty, all influenced the price.

42      Various types of loans and loan terms earned greater prices, or "premiums," in the secondary market. For example, investors in mortgages and mortgage backed securities have

[HECTOR MORENO and ANA MORENO – COMPLAINT]      9

EXHIBIT 1
PAGE 10 OF 45

1  been willing to pay higher premiums for loans with prepayment penalties and balloon payment

2  as the Plaintiff's loan transaction. Because the prepayment penalty deters borrowers from

3  refinancing early in the life of the loan, it essentially ensures that the income stream from the

4  loan will continue while the payment penalty is in effect. Defendants typically sought to market

5  loans that earned it higher premiums, including loans with prepayment penalties.

6      43      Defendants develop ways to generate an ever larger volume of the types of loans

7  most demanded by investors. For example, Defendants developed and modified loan products by

8  discussing with investors the prices they would be willing to pay for loans with particular

9  characteristics and subsequently entered into mortgage purchasing agreements with investors.

10  This enable Defendants to determine which loans were most likely to be sold on the secondary

11  market for the highest premiums.

12      44      Further, rather than waiting to sell loans until after they were made, Defendants

13  would sell loans "forward" before loans were funded.

14      45      Loans that were sold forward were sold subject to a set of stipulations between

15  Defendants and the purchaser contained on the mortgage purchasing agreement (usually

16  registered with the U.S. Securities and Exchange Commission). For example, in a sale of whole

17  loans, defendants might agree on April 1 that on June 30 it would deliver 3,500 adjustable rate

18  mortgage loans with an average interest rate of 6%, half of which would be subject to a

19  prepayment penalty, among other characteristics. (None of these loans would have been

20  generated as of April 1). Based on the stipulations regarding the characteristics of the loans to be

21  included in the pool, an investor might agree to pay a price totaling 102.5% of the total face value

22  of the loans. In other words, the purchaser agreed in advance to pay a premium of 2.5%.

23      46      Defendants originated as many loans as possible not only to maximize its profits

24  on the secondary market, but to earn greater profits from servicing the mortgages it sold.

25      47      Defendants engaged in deceptive practices such as offering a low teaser rate for

26  introductory periods. When teaser rate expired, loans immediately become an adjustable rate, in

27  addition to pre-payment penalties.

28

[HECTOR MORENO and ANA MORENO      COMPLAINT]

EXHIBIT 1
PAGE 11 OF 45

48    Defendants deceptively marketed such loans because those loans could be sold for a higher premium on the secondary market.

49    Borrowers, enticed by the low teaser rate, were easily distracted from the fine print in the loan documents and did not fully understand the terms or the financial implications of Defendants' ARMs loan products. Defendants would turn borrowers' attention to the initial low "teaser" payment and misrepresenting the true risks of their loan products. Defendants' sales approach was to "sell the payment", the initial payment that is.

50    Defendants would only show on initial documentation the initial teaser monthly payments. Documents provided lead borrower assumed she would make only the minimum payment. Thus, Borrower would not know the monthly payment that would cover accruing interest and escrow until she received the first statement after the expiration of the teaser rate, well after all documents were signed.

Defendants misrepresented true terms of the ARMs by:

    a.    misrepresenting the amount of time that the interest rate would be fixed for the loan;

    b.    misrepresenting the risk of the ARMs

    c.    misrepresenting the fact that the payment rate was not the interest rate;

    d.    misrepresenting that the minimum payment would last the entire term of the loan.

    e.    misrepresenting how difficult would be for borrowers to refinance a ARM loan with a balloon payment, since after making only minimum payments, negative amortization would eventually take over and the borrower would be upside-down; thus, making refinancing impossible.

    d.    misrepresented the fact that ARM included a prepayment penalty in addition to a balloon payment.

    e.    misrepresented the effect that making only the minimum payment would have on the prepayment penalty. Negative amortization could cause

principal to increase. It also increases the amount of interest, which in turn increases the prepayment penalty.

    f.    misrepresented that Defendants would be able to waive prepayment penalty if borrower refinanced with them. However, Defendants would not be able to waive the penalty. The majority of Defendants loans were sold in the secondary market, thus, limiting their authority to waive such penalty.

51    In an effort to increase their loan origination in order to sell them to the secondary market, Defendants relaxed established, generally accepted, underwriting criteria. This would increase the likelihood that borrower would lose their homes.

52    Traditionally, lenders required borrowers seeking mortgage loans to document their income, for example by providing W-2s or tax returns, as well as assets. Defendants disregarded such requirements by introducing SISA loans or NINJAs, acronyms for "stated income stated assets" and "no income no job assets" respectively. These loan programs allowed Defendants to make more loans and more quickly in order to sell them in the secondary market.

53    Defendants' compensation in the form of yield spread premium, rebates or kickbacks induced many mortgage brokers that would earn Defendants the most profits on the secondary market, regardless that such loans would be detrimental to the borrower.

54    A borrower retains the services of a mortgage broker to negotiate and acceptable loan plan. Thus, a mortgage broker would owe fiduciary duty to the borrower. This means that broker would make full and accurate disclosure of loan terms to borrowers, particularly those that might affect the borrower's decision, and to act always in the best interest of the borrower.

55    Defendants' compensation to brokers as described on the above paragraph is in violation of RESPA. Such compensation induced brokers to breach their fiduciary duties to borrowers by placing them into loans with a higher interest rate than the rate for which borrowers qualified, in order to increase Defendants profits on the selling of such loans in the secondary market. In addition, Defendants would pay a rebate to a broker for placing borrowers in loans that included prepayment penalty and/or balloon payments. The loans were doom to foreclosure.

[HECTOR MORENO and ANA MORENO ...

EXHIBIT 1
PAGE 13 OF 45

56      Defendants took advantage of borrowers' innate desire to have a home of their own. Therefore, Defendants induce borrowers into believing that it was looking out for their best interest when offered the mentioned loan products.

### V. FACTUAL BACKGROUND

57      Plaintiff financed the home located at 3626 West Lawrence Road, Phoenix, Arizona 85021 on or about 01/12/2006.

58      The loan transaction produced the following documents and instruments:

a.      A Good Faith Estimate of Settlement Cost (EXHIBIT A-1) for Primary Loan number 0037389251, with Borrowers name as: Hector Moreno and Ana Moreno. Instrument is Dated 1/05/06, it shows a Loan Amount of 171,520.00 and a Loan Origination Fee/Lender Fee of $1,715.20 and a Yield Spread Premium of $1,929.60. A Closing cost of $4,892.20. Document is not singed yet it was given to plaintiff.

b.      A Good Faith Estimate of Settlement Cost (EXHIBIT A-2) for Secondary Loan number 0037377207, with Borrowers name as: Hector Moreno and Ana Moreno. Instrument is dated 1/05/06, shows a Loan Amount of 42,880.00. Document is not signed by Plaintiff yet it was given to Plaintiff.

c.      Truth In Lending Disclosure Statement (EXHIBIT B) dated 1/05/06 and marked as Preliminary. With Borrowers name as: Hector Moreno and Ana Moreno. Instrument shows an Annual Percentage Rate of 7.456%. Finance Charge $282,460.39. Amount Financed $167,246.76. Total of Payments $449,707.15. Document is not signed yet it was given to Plaintiff as copy.

d.      Truth-In-Lending (TIL) Disclosure Statement (EXHIBIT B-2) dated 1/05/2006 marked as Preliminary. It shows as Borrowers: HECTOR MORENO and ANA MORENO. Annual Percentage Rate: 12.325%. Finance Charge $666,704.26. Amount Financed: $42,169.13 Total of Payments: $708,873.39. Document it not singed by Plaintiffs.

[HECTOR MORENO and ANA MORENO - COMPLAINT]    12

EXHIBIT 1
PAGE 14 OF 45



e.  Truth-In-Lending (TIL) Disclosure Statement (EXHIBIT B-2) dated 1/19/2006 marked as Final. It shows as Borrowers: Alma Camacho & Fernando Ibarra, Annual Percentage Rate: 7.156%. Finance Charge $300,600.73. Amount Financed: $188,310.62. Total of Payments: $488,911.35. Document it not singed by Plaintiffs.

f.  Final Statement (EXHIBIT C) dated 01/13/2006 Document shows a Yield Spread Premium – Mortgage Loan Specialist: POC 1,929.60. A Supplemental Summary: POC $ 53.60. And a 750.00 Paid from Borrower's Funds at Settlement. Instrument also shows a Broker Misc. Fees – Mortgage Loan Specialist of 750.00. And a Yield Spread Premium on a 2nd – Mortgage Loan Specialist of POC $53.60.

g.  Note (EXHIBIT D) for primary loan number 0037389251, dated January 12, 2006. It shows a promise to pay amount of $171,520.00. The Note is payable to LEHMAN BROTHERS BANK, FSB, A FEDERAL SAVINGS BANK or anyone who takes the Note by transfer and who is entitled to receive payments under the Note is called the "Note Holder". Instrument shows a 7.250% and it is signed and initialed by plaintiffs.

h.  Note (EXHIBIT D-2) for secondary loan number 0037377207, dated January 12, 2006. It shows a promise to pay amount of $42,880.00 payable to LEHMAN BROTHERS BANK, FSB. Instrument also shows an interest of 12.250%, it is signed and initialed by Plaintiffs.

i.  A Prepayment Note Addendum (EXHIBIT E) dated January 12, 2006. Plaintiff would have to pay monies equivalent to 6 month interest if prepay loan during first 3 years after origination of loan. Instrument is signed by Plaintiffs.

j.  A Deed of Trust    (EXHIBIT F) dated January 12th 2006 for primary loan number  0037389251. Instrument shows LEHMAN BROTHERS

EXHIBIT 1
PAGE 15 OF 45

1    BANK, FSB as "lender" and      MERS "solely as a nominee for
2    Lender". It also      show the amount of $171,520.00 which Plaintiff
3    was to pay to Lender.

k.    A Deed of Trust (EXHIBIT F-2) January 12th 2006 for secondary loan
5    number 0037377207. Instrument    shows    LEHMAN    BROTHERS
6    BANK, FSB as "lender"    and    MERS "solely as a nominee for
7    Lender". Instrument also shows      the amount of $42,880.00 which
8    Plaintiff was to paid to Lender.

l.    A Substitution of Trustee recorded on 10/03/2008 as instrument No.:
10    20080856666 (EXHIBIT G) shows MERS, INC., as nominee for
11    LEHMAN BROTHERS BANK, FSB as present Beneficiary and
12    substituting CAL-WESTERN RECONVEYANCE CORPORATION as
13    Trustee. The Instrument is signed by Joe Krasovic  as Assistant Secretary
14    of MORTGAGE ELECTRONIC SYSTEMS, INC.; the instrument was
15    acknowledged in San Diego, CA., by Rhonda Rorie.

m.    A Notice of Trustee's Sale recorded on 10/3/2008 as instrument No.:
17    20080856667 (EXHIBIT H) shows a time of event of January 05, 2009 at
18    2:00pm. (Note: date is currently postpone to March 9th, 2009)
19    Instrument also shows MERS INC., c/o Aurora Loan      Services,    as
20    current Beneficiary. The instrument is signed Joe Krasovic as
21    Assistant Vice President of CAL-WESTERN RECONVEYANCE
22    CORPORATION; the instrument was acknowledged in San Diego, CA.,
23    by Rhonda Rorie.

n.    Diagram (EXHIBIT I) illustrates the incredible complexity of the loan
25    pooling process and Defendants' interactions among themselves
26    pertaining Plaintiff's Loan.

27    **COUNT ONE: VIOLATION OF THE ARIZONA ASSIGNMENT AND SATISFACTION**
28    **OF MORTGAGE LAW.**

EXHIBIT 1
PAGE 16 OF 45

1      59    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing

2  paragraphs.

3      60    Exhibits show no recorded chain of title/interest either as original mortgage

4  holder, assignee, trustee, or successor-in-interest for Defendants.

5      61    County records show inconsistencies, on recorded instruments by Defendants,

6  which create conflict.

7      62    County records show inconsistencies, on recorded instruments by Defendants,

8  which create conflict, for example EXHIBIT G and H, the instruments show the following

9  significant information:

10      i)    Exhibit G Notice of Substitution of Trustee recorded on 10/3/2008 as

11      instrument No.: 20080856666.

12      ii)    It is executed by MORTGAGE ELECTRONIC SYSTEMS, INC., by an

13      individual whose name is Joe Krasovic.

14      iii)    It is claimed that Mr. Krasovic is Assistance Secretary of MORTGAGE

15      ELECTRONIC SYSTEMS, INC.

16      iv)    The assignment states that it is executed at San Diego County in California

17      on 10/2/2008.

18      v)    Exhibit F shows that the address of MORTGAGE ELECTRONIC

19      SYSTEMS, INC., is in Flint, MI 48501. However their current address

20      is 1595 Greenhill Road Ste. 310 Vinna, Virginia 22182..

21      vi)    The instrument of assignment does not bear any evidence that Joe

22      Krasovic is Assistance Secretary of MERS, INC., or that MERS, INC.,

23      authorized Mr. Krasovic to execute the assignment in question.

24      vii)    The assignment does not bear any authentication in the form of a corporate

25      seal or stamp indicating that anyone at MERS, INC., authorized this

26      signature.

27      viii)    Of particular interest of the finder of fact is that Exhibit H shows Joe

28      Krasovic the same individual who executed the instrument marked as

Exhibit G, executing the Notice of trustee's Sale as Assistance Vice President of CAL-WESTERN RECONVEYANCE CORPORATION.

ix)    Joe Krasovic appears as Assistance Secretary of MERS, INC., and Assistance Vice President for CAL-WESTERN RECONVEYANCE CORPORATION.

x)    The instrument of assignment (EXHIBIT H) does not bear any evidence that Joe Krasovic is Assistance Vice President of CAL-WESTERN RECONVEYANCE CORPORATION or that CAL-WESTERN RECONVEYANCE CORPORATION authorized Mr. Krasovic to execute the assignment in question.

xi)    Exhibit G does not bear any authentication in the form of a corporate seal or stamp indicating that anyone at CAL-WESTERN RECONVEYANCE CORPORATION, authorized this signature.

63    There is no mention of an assignment, therefore, Defendants have not satisfied its burden of demonstrating standing at the time of recording the Substitution of trustee and the trustee's Sale.

64    Arizona's recording statue requires that all conveyances of real estate be acknowledged and recorded per A.R.S. § 33-412.

65    A land conveyance not notarized and recorded is otherwise void.

66    Because Defendants have not proven that the land was acknowledged and recorded BEFORE foreclosure proceeding began, they cannot go forward with the Trustee's Sale unless and until that proof is made.

67    There is no proof of any assignment, trust or successor interest recorded on the County records prior to foreclosure proceedings.

68    The Deed of Trust is being held after the alleged "sale" to the assignee to the trust.

69    Defendants cannot take an equitable assignment of a Deed of Trust because it is not the legal owner of the Deed of Trust.

70   A.R.S. § 33-420(A), states that [a] person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable, and reasonable attorney fees and costs of the action.

71   Arizona Law states that no estate shall be conveyed unless the conveyance is by an instrument in writing, subscribed and delivered by the party disposing of the estate.

72   Every deed or conveyance of real property must be signed by the grantor and must be duly acknowledged before some officer authorized to take acknowledgements.

73   A party causing an invalid document to be recorded must know or have reason to know under A.R.S. § 33-420 that the document is invalid.

74   Defendants claim of Plaintiff's property contains material misstatements on the face of the documents, thus making their recorded documents invalid.

75   As a direct and proximate cause of Defendants' action, Plaintiff has suffered mental anguish, physical illness as direct result of stress caused by Defendants. In addition, Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in the home, and the imminent prospect of being foreclosed and evicted from his home.

**WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants as follows:

a.   Judgment ordering that the Trustee Sale be cancelled immediately;.

b.   Plaintiffs be awarded monetary damages available under the law.

c.   Punitive damages available under the law.

d.   This Court declares that Defendants have no legal claim to title of the subject property.

e.   Attorneys fees be awarded to Plaintiffs.

[HECTOR MORENO and ANA MORENO

EXHIBIT 1
PAGE 19 OF 45

f.    For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## COUNT TWO: VIOLATION TO THE TRUTH IN LENDING ACT, 15 U.S.C. § 1601 *et seq.*

76    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing paragraphs.

77    Plaintiff did not receive the closing documents prior to closing and at the closing Plaintiff was rushed through signing the documents. Plaintiff did not have any reason to suspect that the documents which he would sign at closing would differ in any way from the previous estimates he had been provided by LEHMAN BROTHERS BANK, FSB; however, the mortgage loan that Defendant ended up with has much higher payment and is an adjustable rate mortgage, which would amortize negatively over time.

78    The end result of the false and misleading representations and material omissions of Defendants as to the true nature of the mortgage loan actually being processed, which said Defendants had actual knowledge was in direct conflict with the original Uniform Residential Loan Application, early TIL, and Plaintiff stated intentions and directions to said Defendants at the time of original application for the loan, fraudulently caused Plaintiff to execute predatory loan documents.

79    At no time whatsoever did Defendants ever advise Plaintiff (nor, as far as Plaintiff can determine, any "investor" in certificates of mortgage-backed securities) that:

a.    the mortgage loan being processed was not in their best interest;

b.    the terms of the mortgage loan being processed were less favorable than the fixed-rate loan which Defendants previously advised Plaintiff that they qualified for;

c.    that the mortgage loan was an inter-temporal transaction (transaction where terms, risks, or provisions at the commencement of the transaction

[HECTOR MORENO and ANA MORENO - COMPLAINT] - 19

EXHIBIT 1
PAGE 20 OF 45

differ at a later time) on which Plaintiff was providing cover for Defendants' illegal activities.

d.    that Plaintiff would likely be placed in a position of default, foreclosure, and deficiency judgment regardless of whether she met her loan obligations once the true lender or true holder(s) in due course appeared;

e.    that the originating "lender", had no intention of retaining ownership interest in the mortgage loan or fully servicing same and in fact may have and probable had already pre-sold the loan, prior to closing, to a third party mortgage aggregator pursuant to previously executed documentation (Assumption and assignment Agreement, Pooling Services Agreement, etc. all executed prior to Plaintiff's "loan Closing."

f.    that the mortgage loan was actually intended to be repeatedly sold and assigned to multiple third parties, including one or more mortgage aggregators and investment bankers (including but not limited to Defendants DOES 1-10), for the ultimate purpose of bundling the Plaintiff' mortgage with hundreds or perhaps thousands of others as part of a companion, support, or other tranche in connection with the creation of a REMIC security known as a Collateralized Mortgage Obligation ("CMO"), also known as a "mortgage-backed security" to be sold by a securities firm (and which in fact ended up as collateral for Asset-Backed Securities Certificates, created the same year as the closing);

g.    that the mortgage instrument and Promissory Note may be sold, transferred, or assigned separately to separate third parties so that the later "holder" of the Promissory Note may not be in privity with or have the legal right to foreclose in the event of default;

h.    that in connection with the multiple down line resale and assignment of the mortgage and Promissory Note that assignees or purchasers of the

EXHIBIT 1
PAGE 21 OF 45

1    Note may make "pay-downs" against the Note which may effect the true

2    amount owed by the Plaintiff on the Note;

3        i.    that a successive assignee or purchaser of the Note and Mortgage may not,

4    upon assignment or purchase, unilaterally impose property insurance

5    requirements different from those imposed as a condition of the original

6    loan (also known as prohibition against increased forced-placed coverage)

7    without the Plaintiff' prior notice and consent;

8        80    As a result of the closing and in connection therewith, Defendants placed the

9    Plaintiff into a pool of a sub-prime adjustable rate mortgage programs, with Defendants

10   intentionally misleading Plaintiff and the other borrowers and engaging in material omissions by

11   failing to disclose to Plaintiff and other borrowers the fact that the nature of the mortgage loan

12   applications had been materially changed without Plaintiff's knowledge or consent, and that

13   Plaintiff was being placed into a pool where the usual loan was an adjustable rate mortgage

14   program despite borrowers not being fully qualified for such a program.

15       81    Prior to the closing on or about 1/12/2006, Defendant failed to provide to Plaintiff

16   the preliminary disclosures required by the Truth-In-Lending Act pursuant to 12 CFR (also

17   known as and referred to herein as "Regulation Z) sec. 226.17 and 18, and failed to provide the

18   preliminary disclosures required by the Real Estate Settlement Procedures Act ("RESPA")

19   pursuant to 24 FR sec. 3500.6 and 35007, otherwise known as the GFE.

20       82    Defendants also intentionally failed and/or refused to provide Plaintiff with

21   various disclosures which would indicate to the Plaintiff that the consumer credit contract

22   entered into was void, illegal, and predatory in nature. Defendants failed to provide Plaintiff with

23   the final TIL disclosures, therefore Plaintiffs never received correct disclosures pertaining APR,

24   Finance Charge, and Amount Financed

25       83    Defendants failed and/or refused to provide a final HUD-1A Settlement Statement

26   at the closing which reflects the true cost of the consumer credit transaction. As Defendants

27   failed to provide an accurate GFE or Itemization of Amount Financed ("IOAF"), there was no

28   disclosure of a loan origination fee to Mortgage Broker prior to closing:

84    As a direct and proximate result of these failures to disclose as required by the Truth-In-Lending Act, Defendants received a Loan Origination Fee (LOF) in a substantial amount of without preliminary disclosure, which is a *per se* violation of 12 CFR sec. 226.4(a), 226.17 and 18(d) and (c)(1)(iii). The LOF raised the interest rate which was completely unknown to or approved by the Plaintiff, as they did not received the required GFE, IOAF or Final HUD-1.

85    . Defendants did not disclose properly Early Disclosures in violation of the Real Estate Settlement Procedures Act (RESPA) and the Truth In Lending Act (TILA).

86    In addition to the above and below, Defendants fail to provide proper and accurate material disclosures required under the TILA at the time of closing. Specifically Defendants failed to include all of the prepaid finance charges in the amount financed and to accurately state the interest portion of the finance charge.

87    The Amount Financed within the TIL is also understated which is a material violation of 12 CFR sec. 226.17 and 18, in addition to 15 USC sec. 1602(u), as the Amount Financed must be completely accurate with no tolerance.

88    Defendants were under numerous legal obligations as fiduciaries and had the responsibility for overseeing the purported loan consummation to insure that the consummation was legal, proper, and that Plaintiff received all legally required disclosures pursuant to the Truth-In-Lending Act and RESPA both before and after the closing.

89    Plaintiff, not being in the consumer lending, mortgage broker, or residential loan business, reasonably relied upon the Defendants to insure that the consumer credit transaction was legal, proper, and complied with all applicable laws, rules, and Regulations.

90    At all times relevant hereto, Defendants regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four (4) installments and was initially payable to the person the subject of the transaction, rendering Defendants "creditors" within the meaning of the Truth-In-Lending Act, 15 U.S.C. sec. 1602(f) and Regulation Z sec. 226.2 (a)(17).

91    At the closing of the subject "loan transaction", Plaintiff executed Promissory Notes and Security Agreements in favor of Defendants as aforesaid. These transactions,

[HECTOR MORENO and ANA MORENO    COMPLAINT

EXHIBIT 1
PAGE 23 OF 45

1  designated by Defendants as a Loan, extended consumer credit which was subject to a finance
2  charge and which was initially payable to the Defendants.

3      92    As part of the consumer credit transaction the subject of the closing, Defendants
4  retained a security interest in the subject property which was Plaintiff' principal residential
5  dwelling.

6      93    Defendants engaged in a pattern and practice of defrauding Plaintiff in that,
7  during the entire life of the mortgage loan, Defendants failed to properly credit payments made;
8  incorrectly calculated interest on the accounts; and have failed to accurately debit fees.

9      94.    Defendants had actual knowledge that the Plaintiff accounts were not accurate
10 but that Plaintiff would make further payments based on Defendants' inaccurate accounts.
11 Plaintiff made payments based on the improper, inaccurate, and fraudulent representations as to
12 Plaintiff accounts. As a direct and proximate result of the actions of the Defendants set forth
13 above, Plaintiff overpaid in interest. Defendants also utilized amounts known to the Defendants
14 to be inaccurate to determine the amount allegedly due and owing for purposes of foreclosure.

15     95    As a direct and proximate cause of Defendants' action, Plaintiff has suffered
16 mental anguish, physical illness as direct result of stress caused by Defendants. In addition,
17 Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in
18 the home, and the imminent prospect of being foreclosed and evicted from his home.

19     WHEREFORE, Plaintiff prays this Court that judgment be entered against Defendants
20 as follows:

21     a.    Judgment ordering that the Trustee Sale be cancelled immediately;
22     b.    Award actual damages to be established at trial pursuant 15 U.S.C. §
23          1640;
24     c.    Award Plaintiff costs and reasonable attorneys fees in accordance with 15
25          U.S.C. § 1640;
26     d.    For such other and further equitable relief, declaratory relief and legal
27          damages as may be permitted by law and as the court may consider just
28          and proper.

[HECTOR MORENO and ANA MORENO – COMPLAINT]

EXHIBIT 1
PAGE 24 OF 45

## COUNT THREE: VIOLATION TO THE HOME OWNERSHIP AND EQUITY PROTECTION ACT (HOEPA), 15 U.S.C. § 1639

96    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing paragraphs.

97    The transaction entered by Plaintiff and Defendants is a HOEPA mortgage as set forth in 15 U.S.C. § 1602(aa).

98    Defendants violated the disclosure requirements for a HOEPA mortgage as set forth in 15 U.S.C. § 1609(a).

99    Defendants violated 15 U.S.C. § 1639(h) which prohibits a creditor from engaging in a pattern or practice of extending such credit to consumers based on the consumer's collateral if, considering the consumer's current and expected income, current obligations, and employment status, the consumer will be unable to make the scheduled payments to repay the obligation.

100    Creditor violates Reg. Z, 12 C.F.R. § 226.34(a)(4) if the creditor does not verify and document the borrower's ability to repay. So-called "no-doc" covered loans trigger this presumption. Failing to underwrite loans based on traditional underwriting criteria such as debt-to-income ratio, loan-to-value ratio, FICO score, reserves, and work history. These criteria ensure that a borrower is obtaining a loan that he or she has the resources and assets to repay, and ignoring these criteria results in many loans that bear no relation to borrowers' ability to repay them. This allows the lender to make a quick profit from the origination, but sets the borrower up for default and foreclosure.

101    Defendants, enticed by the prospect of short-term profits resulting from exorbitant origination fees, and related pricing schemes, took advantage of a rapidly market to convince Plaintiff and other borrowers to enter into loans they could not afford. Often this was accomplished with the help of deceptive practices and promises to refinance at a later date. These abusive Defendants did not worry about the consequences of default or foreclosure to their business because once made or prior to signing, the loans were sold to the secondary market.

EXHIBIT 1
PAGE 25 OF 45

102    These practices maximize short-term profit to Defendants without regard to the borrower's best interest, the borrower's ability to repay, or the financial health of underserved minority neighborhoods.

103    Defendants issuing of a loan to plaintiff was not because Plaintiff ability to repay it, but rather to take possession of Plaintiff's home. The practice is unfair and unconscionable. Stealing Plaintiff's home does not have a legitimate business justification outweighing the Plaintiff injury.

104    Had Plaintiff known of the falsity of Defendants' representations, plaintiff would not have entered into the transactions the subject of this action.

105    HOPA was violated since prohibits Defendants from engaging in a pattern or practice of extending high-cost loan without regard to Plaintiff's ability to repay from sources other than encumbered home's equity. Defendants' pattern or practice of such lending entitles Plaintiff to actual and statutory damages under 15 U.S.C. § 1640(a).

106    Defendants knew or should have known about their failures to comply with the TILA and HOEPA.

107    As a direct and proximate cause of Defendants' action, Plaintiff has suffered mental anguish, physical illness as direct result of stress caused by Defendants. In addition, Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in the home, and the imminent prospect of being foreclosed and evicted from his home.

108    Defendants are liable for Plaintiffs' claims arising out of Defendants' failure to comply with the TILA and HOEPA.

WHEREFORE, Plaintiff prays this Court that judgment be entered against Defendants as follows:

    a.    Judgment ordering that the Trustee Sale be cancelled immediately;

    b.    Plaintiffs be awarded monetary damages available under the law.

    c.    Punitive damages available under the law.

    d.    This Court declares that Defendants have no legal claim to title of the subject property.

1       e.       Attorneys fees be awarded to Plaintiffs.

2       f.       For such other and further equitable relief, declaratory relief and legal

3                    damages as may be permitted by law and as the court may consider just

4                    and proper.

5 **COUNT FOUR: VIOLATION OF THE UNIFORM COMMERCIAL CODE**

6        109     Plaintiff reaffirms, re-allege and incorporate by reference the foregoing

7 paragraphs.

8        110     The promissory note (EXHIBIT D, and/or D-2) referred to in the Deed of Trust

9 (EXHIBIT F), is a negotiable instrument, governed by A.R.S. § 44-3104(a), (b) and (e).

10        111     Plaintiffs allege that Defendants do not meet the definition of a Holder-in-Due-

11 course under A.R.S. § 44-3302.

12        112     Plaintiffs also allege that defendants are not entitled to enforce the Deed of Trust,

13 and, therefore, cannot legally go forward with the trustee's sale.

14        113     Defendants, at this time, cannot prove that they have properly transferred

15 possession of the note or Deed of Trust pursuant A.R.S. § 44-3201.

16        114     Defendants are not in possession of the underlying instruments, that is the

17 promissory Note and Deed of Trust, and therefore, cannot enforce the instrument.

18        115     Arizona's recording statute requires that all conveyances of real estate be

19 acknowledged and recorded pursuant A.R.S. § 33-412.

20        116     A land conveyance not properly acknowledged and recorded is otherwise void.

21        117     Because Defendants have not proven that the land conveyance was acknowledged

22 and recorded, they cannot go forward with the Trustee's Sale unless and until that proof is made.

23        118     As a direct and proximate cause of Defendants' action, Plaintiff has suffered

24 mental anguish, physical illness as direct result of stress caused by Defendants. In addition,

25 Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in

26 the home, and the imminent prospect of being foreclosed and evicted from his home.

27       **WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants

28 as follows:

EXHIBIT 1
PAGE 27 OF 45

a.   Judgment ordering that the Trustee Sale be cancelled immediately;

b.   Plaintiffs be awarded monetary damages available under the law.

c.   Punitive damages available under the law.

d.   This Court declares that Defendants have no legal claim to title of the subject property.

e.   Attorneys fees be awarded to Plaintiffs.

f.   For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## COUNT FIVE: VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

119   Plaintiff reaffirms, re-allege and incorporate by reference the foregoing paragraphs.

120   Defendants violated the FDCPA, 15 U.S.C. §1692f, by using unfair and unconscionable means to collect the debt owed by the plaintiff, including the collecting and attempting to collect the debt owed by the Plaintiff.

121   Defendants violated the FDCPA, 15 U.S.C. § 1692d(1)and (5) and (6) by:

a.   threatening to foreclosure on the Plaintiff's home even though Defendants have no present right to possession of the property under its security agreement.

b.   threatening to take other action prohibited by law;

c.   causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number, in violation of 15 U.S.C. § 1692d(5);

d.   the placement of telephone calls without meaningful disclosure of the caller's identity, in violation of 15 U.S.C. § 1692d(6).

122   As a direct and proximate cause of Defendants' action, Plaintiff has suffered mental anguish, physical illness as direct result of stress caused by Defendants. In addition,

[HECTOR MORENO and ANA MORENO – COMPLAINT]    26

EXHIBIT 1
PAGE 28 OF 45

1   Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in

2   the home, and the imminent prospect of being foreclosed and evicted from his home.

3        **WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants

4   as follows:

5          a.     Judgment ordering that the Trustee Sale be cancelled immediately;

6          b.     Plaintiffs be awarded monetary damages available under the law.

7          c.     Punitive damages available under the law.

8          d.     This Court declares that Defendants have no legal claim to title of the

9                 subject property.

10         e.     Attorneys fees be awarded to Plaintiffs.

11         f.     For such other and further equitable relief, declaratory relief and legal

12                damages as may be permitted by law and as the court may consider just

13                and proper.

14  ## COUNT SIX: FRAUD, MISREPRESENTATION AND CONSPIRACY

15      123    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing

16  paragraphs.

17      124    Defendants made certain representations and omissions to plaintiffs, including,

18  but not limited to those set forth more fully above and below.

19      125    The representations and omissions described above and below, among others,

20  were false.

21      126    The representations and omissions described above and below, among others

22  were material, among other things, to plaintiffs.

23      127    Defendants made these and other representations and omissions with knowledge

24  of their falsity.

25      128    Defendants made these and other representations and omissions to induce

26  Plaintiffs to enter into a predatory mortgage loan transaction issued by Defendants.

27      129    Plaintiffs were not aware that defendants' representations and omissions were

28  false.

EXHIBIT 1
PAGE 29 OF 45

130    Plaintiffs relied on the truth of Defendants' representations and omissions to the Plaintiffs' detriment.

131    Plaintiffs had no reason to question the truth of Defendants' representations and omissions.

132    Had Plaintiff known of the falsity of Defendants' representations, plaintiff would not have entered into the transactions the subject of this action.

133    As a direct and proximate cause of Defendants' action, Plaintiff has suffered mental anguish, physical illness as direct result of stress caused by Defendants. In addition, Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in the home, and the imminent prospect of being foreclosed and evicted from his home.

**WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants as follows:

    a.    Judgment ordering that the Trustee Sale be cancelled immediately;

    b.    Plaintiffs be awarded monetary damages available under the law;

    c.    Punitive damages available under the law;

    d.    For actual and consequential damages as may be proved at the time of trial;

    e.    This Court declares that Defendants have no legal claim to title of the subject property;

    f.    Attorneys fees be awarded to Plaintiffs;

    g.    For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## COUNT SEVEN: CONVERSION/CIVIL THEFT

134    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing paragraphs.

135    Defendants have intentionally seized, held or otherwise interfered with Plaintiffs' beneficial use of their Property without legal justification or privilege.

[HECTOR MORENO and ANA MORENO

EXHIBIT 1
PAGE 30 OF 45

1    136    By their conduct, Defendants have converted the property of Plaintiffs for their
2  own use, or they hold the Property for the benefit of an unknown Defendant.

3    137    Defendants have engaged in an unlawful combination and conspiracy to foreclose
4  on home loans against individuals for the purpose of unjustly enriching themselves in violation
5  of law. This unlawful activity had the effect of unjustly enriching the joint venturers and
6  conspirators.

7    138    Defendants' actions were deliberate, harmful, wanton and in bad faith.

8    139    As a direct and proximate cause of Defendants' action, Plaintiff has suffered
9  mental anguish, physical illness as direct result of stress caused by Defendants. In addition,
10  Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in
11  the home, and the imminent prospect of being foreclosed and evicted from his home.

12    **WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants
13  as follows:

14       a.    Judgment ordering that the Trustee Sale be cancelled immediately;

15       b.    Plaintiffs be awarded monetary damages available under the law;

16       c.    Punitive damages available under the law;

17       d.    For actual and consequential damages as may be proved at the time of
18             trial;

19       e.    This Court declares that Defendants have no legal claim to title of the
20             subject property;

21       f.    Attorneys fees be awarded to Plaintiffs;

22       g.    For such other and further equitable relief, declaratory relief and legal
23             damages as may be permitted by law and as the court may consider just
24             and proper.

25  **COUNT EIGHT: VIOLATION TO R.I.C.O. 18 U.S.C. §§ 1961 _et seq_ and A.R.S. § 13-2314**
26  _et seq_.

27    140    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing
28  paragraphs.

141    Defendants have used non-judicial means to foreclose on the Plaintiffs' Property. Defendants did not have a legal right to foreclose on said Property. The use of non-judicial means to foreclose on Plaintiffs' Property and collect on the alleged debt is extortions as set forth at A.R.S. § 13-2301(D)(4).

142    In undertaking the aforesaid acts, Defendants were participating in and have participated in scheme of racketeering as that term is defined in RICO, 18 U.S.C. §§ 1961 *et seq.* and A.R.S. § 13-2314 *et seq.*

143    Had Plaintiff known of the falsity of Defendants' representations, plaintiff would not have entered into the transactions the subject of this action.

144    As a result of Defendants' misconduct, Plaintiffs have sustained reasonably foreseeable injury to their property by a pattern of racketeering activity in violation of A.R.S. § 13-2314, *et seq.* and Plaintiffs are thus entitled to the remedies available under RICO in civil actions.

145    As a direct and proximate cause of Defendants' action, Plaintiff has suffered mental anguish, physical illness as direct result of stress caused by Defendants. In addition, Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in the home, and the imminent prospect of being foreclosed and evicted from his home.

**WHEREFORE,** Plaintiff prays this Court that judgment be entered against Defendants as follows:

    a.    Judgment ordering that the Trustee Sale be cancelled immediately;

    b.    Plaintiffs be awarded monetary damages available under the law;

    c.    Punitive damages available under the law;

    d.    For actual and consequential damages as may be proved at the time of trial;

    e.    This Court declares that Defendants have no legal claim to title of the subject property;

    f.    Attorneys fees be awarded to Plaintiffs;

[HECTOR MORENO and ANA MORENO    COMPLAINT]

EXHIBIT 1
PAGE 32 OF 45

g.    For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## COUNT NINE: UNJUST ENRICHMENT

146    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing paragraphs.

147    The actions by Defendants in foreclosing Plaintiffs' Property in violation of law results in Defendants being unjustly enriched by the payment of fees, insurance proceeds and Government bailout money.

148    As a direct and proximate cause of Defendants' action, Plaintiff has suffered mental anguish, physical illness as direct result of stress caused by Defendants. In addition, Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in the home, and the imminent prospect of being foreclosed and evicted from his home.

WHEREFORE, Plaintiff prays this Court that judgment be entered against Defendants as follows:

a.    Judgment ordering that the Trustee Sale be cancelled immediately;

b.    Plaintiffs be awarded monetary damages available under the law;

c.    Punitive damages available under the law;

d.    For actual and consequential damages as may be proved at the time of trial;

e.    This Court declares that Defendants have no legal claim to title of the subject property;

f.    Attorneys fees be awarded to Plaintiffs;

g.    For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## COUNT TEN: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

[HECTOR MORENO and ANA MORENO    COMPLAINT]

EXHIBIT 1
PAGE 33 OF 45

1    149   Plaintiff reaffirms, re-allege and incorporate by reference the foregoing
2  paragraphs.

3    150   Defendants' actions described above and below are extreme.

4    151   Defendants intentions are to cause Plaintiffs severe emotional distress.

5    152   As a direct and proximate cause of Defendants' action, Plaintiff has suffered
6  mental anguish, physical illness as direct result of stress caused by Defendants. In addition,
7  Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in
8  the home, and the imminent prospect of being foreclosed and evicted from his home.

9    **WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants
10  as follows:

11    a.   Judgment ordering that the Trustee Sale be cancelled immediately;
12    b.   Plaintiffs be awarded monetary damages available under the law;
13    c.   Punitive damages available under the law;
14    d.   For actual and consequential damages as may be proved at the time of
15       trial;
16    e.   This Court declares that Defendants have no legal claim to title of the
17       subject property;
18    f.   Attorneys fees be awarded to Plaintiffs;
19    g.   For such other and further equitable relief, declaratory relief and legal
20       damages as may be permitted by law and as the court may consider just
21       and proper.

22  **COUNT ELEVEN: SLANDER ON TITLE**

23    153   Plaintiff reaffirms, re-allege and incorporate by reference the foregoing
24  paragraphs.

25    154   Defendants in filling a Trustee's Sale notice-which is void- has caused a clowd to
26  be placed on the title of the Plaintiffs' Property.

27    155   As a direct and proximate cause of Defendants' action, Plaintiff has suffered
28  mental anguish, physical illness as direct result of stress caused by Defendants. In addition,

[HECTOR MORENO and ANA MORENO – COMPLAINT]

EXHIBIT 1
PAGE 34 OF 45

1    Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in
2    the home, and the imminent prospect of being foreclosed and evicted from his home.

3        **WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants
4    as follows:

5        a.    Judgment ordering that the Trustee Sale be cancelled immediately;

6        b.    Plaintiffs be awarded monetary damages available under the law;

7        c.    Punitive damages available under the law;

8        d.    For actual and consequential damages as may be proved at the time of
9            trial;

10       e.    This Court declares that Defendants have no legal claim to title of the
11           subject property;

12       f.    Attorneys fees be awarded to Plaintiffs;

13       g.    For such other and further equitable relief, declaratory relief and legal
14           damages as may be permitted by law and as the court may consider just
15           and proper.

16   ## COUNT TWELVE: DEFENDANT M.E.R.S. INC., NOT HOLDER-IN-DUE COURSE

17       156    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing
18   paragraphs.

19       157    www.MERSINC.org., by its own Terms and Conditions of Membership that are
20   published on MERS' website at www.MERSINC.org, MERS agrees not to assert any rights with
21   respect mortgage loans and states:

22           "MERS and the Member agree that: (i) the MERS System is not a vehicle
23           for creating or transferring beneficial interest in mortgage loans".

24       158    MERS has no beneficial interest in the mortgage. *See* Fannie Mae Single Family
25   Servicing Guide, pt. IV, ch. 1, § 103 (EXHIBIT XX).

26       159    Deed of Trust says that MERS is a "nominee". Deed of trust does not define the
27   rights and duties of MERS as a nominee; however, *Black's Law Dictionary* 727 (6th ed. 1991)

28

[HECTOR MORENO and ANA MORENO – COMPLAINT]

EXHIBIT 1
PAGE 35 OF 45

1  defines "nominee" as one designated to act for another as his representative in a rather limited
2  sense.

3       160   ""nominee" should be given its commonly accepted meaning. It connotes the
4  delegation of authority in a representative or nominal capacity only, and does not connote the
5  transfer or assignment to the nominee of any property in ownership of the rights of the person
6  nominating him" (*Winters National Bank and Trust Company v. Saker,* 419 N.E. 2d 890 (Ohio
7  App. 1979)).

8       161   MERS is not a trustee; it is a nominee only, holding title to the mortgage but not
9  the note. *Mortgage Elec. Registration Systems, Inc. v. Estrella,* 390 F3d 522, 525 (7th Cir. 2007);

10      162   As mere nominee, Defendant MERS cannot prosecute foreclosure in its own
11 name because it does not own the note and mortgage, and its assignment of mortgage to a bank is
12 also ineffective. *Lasalle Bank v. Lamy,* 824 N.Y.S.2d 769 (Sup. Ct. 2006).

13      163   In this case, MERS' assignments as Beneficiary of the subject Deed of trust and
14 Note are inconsistent with the documents attached to the complaint.

15      164   MERS cannot plead any assignment of the subject Note or Deed of trust.

16      165   As a direct and proximate cause of Defendants' action, Plaintiff has suffered
17 mental anguish, physical illness as direct result of stress caused by Defendants. In addition,
18 Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in
19 the home, and the imminent prospect of being foreclosed and evicted from his home.

20      **WHEREFORE,** Plaintiff prays this Court that judgment be entered against Defendants
21 as follows:

22      a.   Judgment ordering that the Trustee Sale be cancelled immediately;
23      b.   Plaintiffs be awarded monetary damages available under the law;
24      c.   Punitive damages available under the law;
25      d.   For actual and consequential damages as may be proved at the time of
26           trial;
27      e.   This Court declares that Defendants have no legal claim to title of the
28           subject property;

f.      Attorney's fees be awarded to Plaintiffs;

g.      For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## COUNT THIRTEEN: QUIET TITLE

166     Plaintiff reaffirms, re-allege and incorporate by reference the foregoing paragraphs.

167     Plaintiffs are informed and believe that Defendants make some claim adverse to Plaintiffs.

168     Defendants allege that they are the holder of the Promissory Note and Deed of Trust on the property.

169     The exhibits incorporated herein do not identify any of the Defendants as the Beneficiary.

170     There is no mention of an assignment, therefore, Defendants have not satisfied its burden of demonstrating standing at the time of recording the Substitution of trustee and the trustee's Sale.

171     Exhibits show no recorded chain of title/interest either as original mortgage holder, assignee, trustee, or successor-in-interest for Defendants.

172     County records show inconsistencies, on recorded instruments by Defendants, which create conflict.

173     There is no proof of any assignment, trust or successor interest.

174     When exhibits are inconsistent with Defendants' allegations of material fact as to who the real party in interest is, such allegations cancel each other out.

WHEREFORE, Plaintiff prays this Court that judgment be entered against Defendants as follows:

a.      Judgment ordering that the Trustee Sale be cancelled immediately;

b.      Plaintiffs be awarded monetary damages available under the law;

c.      Punitive damages available under the law;

[HECTOR MORENO and ANA MORENO — COMPLAINT]    35

EXHIBIT 1
PAGE 37 OF 45

d.  For actual and consequential damages as may be proved at the time of trial; .

e.  This Court declares that Defendants have no legal claim to title of the subject property;

f.  Attorneys fees be awarded to Plaintiffs;

g.  For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## COUNT FOURTEEN: BREACH OF FIDUCIARY DUTY

175  Plaintiff reaffirms, re-allege and incorporate by reference the foregoing paragraphs.

176  Fiduciary relationship arises when a party-a "weaker" party in the sense of the ability to protect itself, places trust and confidence in another.

177  Defendants by their actions in contracting to provide mortgage loan services and a loan program to plaintiff which was not only to be best suited to the Plaintiff given his income and expenses but by which Plaintiff would also be able to satisfy their obligations without risk of losing their home, where "fiduciaries" in which Plaintiff reposed trust and confidence, especially given that Plaintiff was not and is not investment banker, security dealer, mortgage lender, or mortgage broker.

178  Defendants breached their fiduciary duties to the plaintiff by fraudulently inducing Plaintiff to enter into mortgage transaction which was contrary to the Plaintiff's stated intentions; contrary to the Plaintiff's interests; and contrary to the Plaintiff's preservation of his home.

179  Had Plaintiff known of the falsity of Defendants' representations, plaintiff would not have entered into the transactions the subject of this action.

180  As a direct and proximate cause of Defendants'. action, Plaintiff has suffered mental anguish, physical illness as direct result of stress caused by Defendants. In addition,

EXHIBIT 1
PAGE 38 OF 45

1    Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in

2    the home, and the imminent prospect of being foreclosed and evicted from his home.

3        **WHEREFORE,** Plaintiff prays this Court to

4        a.    enjoin Defendants foreclosure procedures and hold an evidentiary hearing

5              to allow Plaintiffs to establish that they have properly exercised their

6              statutory right to rescind the Home Funds Direct mortgage.

7        b.    Plaintiffs be awarded monetary damages available under the law.

8        c.    Punitive damages available under the law.

9        d.    This Court declare that Defendants have no legal claim to title of the

10             subject property.

11       e.    Attorneys fees be awarded to Plaintiffs.

12       f.    For such other and further equitable relief, declaratory relief and legal

13             damages as may be permitted by law and as the court may consider just

14             and proper

15   <u>COUNT FIFTEEN: VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT,</u>

16   <u>A.R.S. § 44-1521, *et seq.*</u>

17       181    Plaintiff reaffirms, re-allege and incorporate by reference the foregoing

18   paragraphs.

19       182    Defendants above and below-described actions constitute violations of the

20   Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.* ("ACFA")

21       183    As result of the Defendants' violations of the ACFA, the Plaintiffs suffered

22   damages in an amount to be determined by this Court.

23       184    Defendants made the misrepresentations described above with the intent and for

24   the purpose of inducing Plaintiffs into signing a predatory agreement for financing and did not

25   provide closing documents required by Arizona and Federal Law.

26       185    Plaintiffs were never aware of the alleged assignment of the Deed of Trust, and

27   the assignment is not recorded with the Maricopa County recorder as required by Arizona Law.

28

EXHIBIT 1
PAGE 39 OF 45

186   In the course of the transactions, each defendant made one or more misrepresentations and/or failed to make accurate representations and/or failed to provide material information about the transactions as set forth more fully above.

187   Said misrepresentations and failure to make accurate representations were made knowingly or with reason to know that Plaintiffs would rely thereon.

188   Said misrepresentations and failure to make accurate representations were material to the transactions.

189   Defendants knowingly and intentionally concealed material information from Plaintiff which is required by Federal Statutes and Regulations to be disclosed to the Plaintiff both before and at closing.

190   Defendants also materially misrepresented material information to the Plaintiff with full knowledge by Defendants that their affirmative representations were false, fraudulent, and misrepresented the truth at the time said representations were made.

191   Under the circumstances, the material omissions and material misrepresentations of the Defendants were malicious.

192   Defendants Failed to disclose disadvantageous cost or nature of the loan.

193   Defendants purposely concealed the identity of the true lender and Defendants' relationship with such entity.

194   Plaintiffs were unaware that the representations described above were false.

195   Plaintiffs acted in reasonable reliance on the representations to their detriment.

196   Because of the above fraudulent misrepresentations and concealment, Plaintiffs did not pursue other available arrangements.

197   The above acts by Defendants constitute a consumer fraud in violation of Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*

198   Defendants' pattern and practice of deception, misrepresentation, concealment of material facts is itself unfair and deceptive.

HECTOR MORENO and ANA MORENO

EXHIBIT 1
PAGE 40 OF 45

1    199    Plaintiff is a vulnerable, unsophisticated member of the public, whose inability to
2    examine the fine point, make him a likely target of Defendants' deceptive and unfair practices
3    and acts.

4    200    Plaintiff, not being investment bankers, securities dealers, lenders, or mortgage
5    brokers, reasonably relied upon the representations of the Defendants in agreeing to execute the
6    mortgage loan documents to his detriment.

7    201    Defendants' pattern of deception and misrepresentation is unconscionable by
8    taking advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly
9    unfair degree.

10    202    Had Plaintiff known of the falsity of Defendants' representations, plaintiff would
11    not have entered into the transactions the subject of this action.

12    203    In violating the ACFA, the Defendants acted with evil mind, intending to injure
13    the Plaintiffs or consciously disregarding the substantial risk that their conduct would cause
14    significant harm to the plaintiffs.

15    204    As a direct and proximate cause of Defendants' action, Plaintiff has suffered
16    mental anguish, physical illness as direct result of stress caused by Defendants. In addition,
17    Plaintiff has suffered substantial economic harm including but not limited to the loss of equity in
18    the home, and the imminent prospect of being foreclosed and evicted from his home.

19    **WHEREFORE**, Plaintiff prays this Court that judgment be entered against Defendants
20    as follows:

21    a.    Judgment ordering that the Trustee Sale be cancelled immediately;

22    b.    Plaintiffs be awarded monetary damages available under the law;

23    c.    Punitive damages available under the law;

24    d.    For actual and consequential damages as may be proved at the time of
25          trial;

26    e.    This Court declares that Defendants have no legal claim to title of the
27          subject property;

28    f.    Attorneys fees be awarded to Plaintiffs;

[HECTOR MORENO and ANA MORENO

EXHIBIT 1
PAGE 41 OF 45

g.   For such other and further equitable relief, declaratory relief and legal damages as may be permitted by law and as the court may consider just and proper.

## RIGHT TO AMEND

Plaintiff reserves the right to amend this Complaint, asserting other facts and causes of action after investigation and discovery.

## JURY DEMAND

Plaintiffs hereby demands trial by jury in the above matter

Dated this 17th, day of February, 2009.



Robert R. Jung

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Amended Verified Complaint has been furnished via U.S. Certified Mail Return Receipt Requested to following Defendants:

1.  AURORA LOAN SERVICES, LLC
    2617 College Park Drive
    Scottsbluff, NE 69361-2294
2.  LEHMAN BROTHER
    HOLDING, INC.
    745 7th Ave.
    New York, NY 10019
3.  LEHMAN XS TRUST 2006-5
    745 7th Ave.
    New York, NY 10019
4.  STRUCTURED ASSET SECURITIES CORPORATION
    745 7th Ave.
    New York, NY 10019
5.  LEHMAN BROTHER, INC.
    745 7th Ave.
    New York, NY 10019
6.  CITI BANK, N.A.
    399 Park Ave
    New York, NY 10022-4614
7.  LEHMAN BROTHERS BANK, FSB
    327 Inverness Dr. South
    Englewood, CO 80112
8.  MORTGAGE ELECTRONIC
    REGISTRATION SYSTEMS, INC.
    1595 Greenhill Road Ste. 310
    Vinna, Virginia 22182
9.  CAL-WESTERN
    RECONVEYANCE CORPORATION
    525 East Main Street
    P.O. Box 22004
    El Cajon, CA 92022-9004

Dated this 17th, day of February, 2009.

Robert R. Jung

[HECTOR MORENO and ANA MORENO - COMPLAINT] - 41

EXHIBIT 1
PAGE 43 OF 45

STATE OF ARIZONA       )
                       )
                       ) ss        VERIFICATION
                       )
COUNTY OF MARICOPA )

I, Hector Moreno, being first duly sworn, upon his oath, deposes and states as follows: That she is the Plaintiff in the above-entitled and numbered matter; that she has read the foregoing VERIFIED COMPLAINT IN SUPPORT TO: TEMPORARY RESTRAINING ORDER (TRO), PRELIMINARY AND PERMANENT INJUCTION AND ORDER TO SHOW CAUSE. EXPEDITED CONSIDERATION REQUESTED in the above captioned Case and knows the contents thereof that the matters stated therein are true of her own knowledge except as those matters stated upon information and belief, and as to those matters she believes them to be true.

*Hector Moreno*

Hector Moreno

On *February 17, 2009* before me, *Cesar F. Silvas* a Notary Public in and for said County and State, personally appeared *Hector Moreno*, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person whose name is subscribed to the within instrument and acknowledge to me that she executed the same in her authorized capacity and that by her signature on the instrument the persons, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

State of Arizona County of Maricopa

)
)
) ss
)
)
)

This instrument was acknowledged before me this *17* day of *February*, *20 09*, by *Cesar F. Silvas*

Notary Public
My Commission will expire *8/24/10*

Notary Public State of Arizona
Maricopa County
Cesar F Silvas
My Commission Expires
08/24/2010

[HECTOR MORENO - COMPLAINT VERIFICATION] - 1

EXHIBIT 1
PAGE 44 OF 45

1  **STATE OF ARIZONA**     )
                            )
2                           ) ss        **VERIFICATION**
                            )
3  **COUNTY OF MARICOPA**   )

4

5      I, Ana Moreno, being first duly sworn, upon his oath, deposes and states as follows: That

6  she is the Plaintiff in the above-entitled and numbered matter; that she has read the foregoing

7  VERIFIED COMPLAINT IN SUPPORT TO: TEMPORARY RESTRAINING ORDER (TRO),

8  PRELIMINARY AND PERMANENT INJUCTION AND ORDER TO SHOW CAUSE.

9

10 EXPEDITED CONSIDERATION REQUESTED in the above captioned Case and knows the

11 contents thereof that the matters stated therein are true of her own knowledge except as those

12 matters stated upon information and belief, and as to those matters she believes them to be true.

13

14                                      _Ana. Moreno_

15                                      Ana Moreno

16 On _February 17, 2009_ before me, _Cesar F. Silvas_      a Notary Public in and for

17 said County and State, personally appeared _Ana Moreno_       , personally known to me

18 (or proved to me on the basis of satisfactory evidence) to be the person whose name is
   subscribed to the within instrument and acknowledge to me that she executed the same in her

19 authorized capacity and that by her signature on the instrument the persons, or the entity upon
   behalf of which the person acted, executed the instrument.

20

21                              WITNESS my hand and official seal.

22                    )          This instrument was acknowledged before me this
                      )          _17th_ day of _Feb_, 20 _09_ by _Cesar F. Silas_
23 State of Arizona County of )  ss
   Maricopa           )
                      )
24                    )          _Cesar_
                      )          Notary Public
25                              My Commission will expire _8/24/10_

26                              Notary Public State of Arizona
                               Maricopa County
                               Cesar F Silvas
27                             My Commission Expires
                               08/24/2010

28

[ANA MORENO – COMPLAINT VERIFICATION] – 1

EXHIBIT 1
PAGE 45 OF 45